IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| DEBORAH ANN SPIVEY SWANGSTU, }<br>}<br>Plaintiff, }<br>}<br>v. }<br>}<br>PEMCO AEROPLEX, INC., }<br>}<br>Defendant. } | CASE NO. CV 01-B-2414-E<br><br>**ENTERED**<br>MAR 25 2004 |

<u>**MEMORANDUM OPINION**</u>

Currently before the court is defendant, Pemco Aeroplex's ("Pemco") objections to the magistrate judge's Report and Recommendation (Doc. 22) regarding defendant's Motion for Summary Judgment (Doc. 24). Defendant objects to the proposed findings and recommendations set forth in the Report and Recommendation of the magistrate judge dated June 4, 2003. Upon consideration of the record, the submissions of the parties, and the relevant law, the magistrate judge's Recommendation that defendant's Motion for Summary Judgment be denied is rejected, and defendant's Motion for Summary Judgment will be granted.

**I.   Procedural history**

Plaintiff brought this action against Pemco under the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601-54. ("FMLA"). (Doc. 1.) Plaintiff alleges Pemco violated the FMLA by interfering with her rights when it terminated her employment on September 5, 2001, for missing five consecutive days from work (August 27, 2001 through August 31, 2001) without reporting to Pemco's Human Resources Department. The case was assigned to Magistrate Judge John E. Ott. Pemco filed a Motion for Summary Judgment. (Doc. 11.) A Report and Recommendation was then filed by the magistrate judge recommending that defendant's Motion

for Summary Judgment be denied. (Doc. 22.) The case was reassigned to and is before this court because the parties did not consent to exercise of final jurisdiction by the magistrate judge under 28 U.S.C. 636(c). (Doc. 23.)

## II.     Factual Summary

Pemco overhauls and modifies aircraft. (Doc. 12, Ex. A at 65-66.[1]) Its facility covers about 200 acres of property, and includes ten aircraft hangar bays, three service bays, and twelve additional support structures. (Doc. 12, Ex. E ¶¶ 2-3.) The total square footage of all buildings at Pemco is over 2,000,000 square feet. (Doc. 12, Ex. E ¶ 4.)

When a Pemco employee misses five or more consecutive work days for a medical reason, Pemco policies require the employee to request a medical leave of absence for that period. (Doc. 12, Ex. D at 16.) Pemco's Human Resource Department ("HRD") has exclusive authority over the granting of medical leaves of absence unconnected with a work injury (Doc. 12, Ex. F ¶ 3), although non-medical personal leaves of absence and any absence of fewer than five days are monitored by an employee's supervisor (Doc. 12, Ex. D at 15-18). Based upon medical information provided to it by the employee requesting leave, the HRD determines whether the employee is eligible for leave, and has the exclusive right to determine the duration of any leave granted. (Doc. 12, Ex. F ¶ 3.) Only the HRD may grant an extension to the employee's leave. (Doc. 12, Ex. F ¶ 3.) All employees granted a leave of absence receive a leave of absence form from the HRD, which states in capital letters:

> IF YOU ARE UNABLE TO RETURN AT THE EXPIRATION OF THIS
> LEAVE, IT IS YOUR RESPONSIBILITY TO GET AN EXTENSION TO
> YOUR LEAVE THROUGH THE HUMAN RESOURCES DEPARTMENT BY

---

[1] A full and complete copy of plaintiff's deposition can be found at Doc. 18, Ex. 1.

PHONING 595-9239.[2]

(Doc. 12, Ex. A at ex. 1.) Plaintiff acknowledged that, during her employment, she had received at least 13 such forms, although she stated she was usually under heavy medication during her medical leaves of absence, and may therefore not have seen this language on the form. (Doc. 12, Ex. A at 83-84 and ex. 1.)

If the HRD approves a leave of absence, the beginning and end date are noted in a folder kept by Elaine Cox for all leaves of absence in a given week. (Doc. 12, Ex. F ¶ 4.) Every week, an administrator in the HRD examines the leave of absence folder for that week to determine which employees have leaves ending that week. (Doc. 12, Ex. F ¶ 4.) If the person on leave does not request an extension to his or her leave of absence, an HRD employee will determine whether that person has returned to work. (Doc. 12, Ex. F ¶ 4.)

A leave of absence for non-work related physical problems cannot be granted by an employee's supervisor; it has to be granted exclusively by the HRD after consideration of any medical information provided. (Doc. 12, Ex. F ¶ 3.) In addition, it is not the supervisor's responsibility to contact the HRD if an employee informs the supervisor of the need to take a medical leave of absence. (Doc. 12, Ex. D at 25.) The supervisor is to instruct the employee to contact the HRD to request the leave and to provide medical documentation to HRD as to the need for leave. (Doc. 12, Ex. D at 24-25, 31.)

---

[2] This phone number was the direct telephone number of Elaine Cox, the Human Resources Assistant in Pemco's HRD, who was responsible for processing leave of absence requests. (Doc. 12, Ex. D at 15-18; 35; Ex. F ¶ 3.) On plaintiff's last leave of absence approval letter, dated August 23, 2001, she was instructed to dial 510-4933, Ms. Cox's new number after Pemco changed its telephone system. (Doc. 12, Ex. F ¶ 3.)

A.     **Pemco's FMLA policy**

Pemco has a separate policy relating to the FMLA, and it includes notice requirements. (Doc. 18, Ex. 7.) Under Pemco's FMLA policy, a leave request for foreseeable medical treatment must be requested at least thirty days in advance, or as soon as practicable if the treatment is to start in less than thirty days. (Doc. 18, Ex. 7 § 3.3.2.) The employee must also schedule the treatment with Pemco so as not to disrupt Pemco's operations. (Doc. 18, Ex. 7 § 3.3.2.) When there is an unforeseeable leave, Pemco's policy only requires notice as soon as practicable. (Doc. 18, Ex. 7 § 3.3.4.) "Written notice will not be required for unforeseeable leave. Notice can be given by the employee in person or by a responsible representative of the employee." (Doc. 18, Ex. 7 § 3.3.4.)

Pemco also requires employees "to provide medical certification from a health care provider to support any request for FMLA-leave . . . ." (Doc. 18, Ex. 7 § 3.6.1.) If the leave is foreseeable, the employee must provide medical certification within fifteen calendar days, but when leave is not foreseeable, medical certification of the leave must be provided as soon as practicable. (Doc. 18, Ex. 7 § 3.6.2.) If the proper certification is not provided for unforeseeable leave, the FMLA-leave can be delayed or denied or can result in denial of the continuation of the FLMA-leave. (Doc. 18, Ex. 7 § 3.6.3.) In addition to the above requirements, "[t]he company reserves the right to require an employee on FMLA-leave to report periodically on his/her status and to return to work following the FMLA-leave." (Doc. 18, Ex. 7 § 3.8.1.)

B.     **Plaintiff's employment at Pemco**

Plaintiff began working at Pemco as a maintenance coordinator on October 10, 1998, and remained in that position for the duration of her employment. (Doc. 12, Ex. A at 64.) Plaintiff

-4-

was responsible for inputting "squawks" (work assignments) into Pemco's computer system. (Doc. 12, Ex. A at 65-67.) When her direct supervisor, Jackie Pierce, was not present, another supervisor in the same department, such as Barbara Shell, would supervise plaintiff. (Doc. 12, Ex. A at 64-65, 69-70, 72-73.) At her termination, plaintiff was stationed in Service Bay 2, which was next to the HRD. (Doc. 12, Ex. A at 74, 89-90.)

Plaintiff requested and received a leave of absence for personal illnesses on at least thirteen occasions, and she never had a problem obtaining a leave of absence on those occasions. (Doc. 12, Ex. A at 102 and ex. 1.) On several of the thirteen occasions plaintiff faxed information concerning her medical leaves of absence to Elaine Cox, Pemco's Human Resources Administrator in its HRD. (Doc. 12, Ex. A at 119-27 and exs. 3, 4; Ex. F ¶¶ 5-7.) Plaintiff claims she would call her supervisor when she was sick, (Doc. 18, Ex. 1 at 92, 109), and she thought leaves of absences were approved by her department head, not the HRD. (Doc. 18, Ex. 1 at 111.) However, Cox recalls that on several occasions plaintiff or her mother called the HRD to request a leave of absence, or request an extension of leave of absence, or faxed medical documentation of her need for a leave of absence. (Doc. 12, Ex. F ¶ 5.) There are several instances where plaintiff contacted the HRD to request leave or leave extensions, and they include the periods of leave for the following dates: June 6, June 15, June 28, July 14, July 17, August 8, and August 18, 2000, as well as August 20, 2001. (Doc. 12, Ex. A at 126-27 and exs. 1, 4; Ex. F ¶¶ 5-6 and ex. 3; Doc. 22 at 6-7; Doc. 24 at 2-3.)

    C.    **Plaintiff's leave in August 2001**

On Friday, August 17, 2001, plaintiff went home from work after her back and ribs began hurting. (Doc. 12, Ex. A at 144-45.) The next day, she went to the emergency room for

treatment. (Doc. 12, Ex. A at 145.) Plaintiff did not report to work on Monday, August 20, 2001, but she notified her supervisor that she would be absent from work due to her back problems. (Doc. 18, Ex. 1 at 196-97.) Plaintiff visited doctors several times that week, and on August 23, 2001, she faxed a note to the HRD department. (Doc. 18, Ex. 1 at 148-49, 151; Doc. 12, Ex. A, ex. 3.)  The note contained a copy of a "Certificate to return to work or school" from plaintiff's doctor, stating plaintiff was under the doctor's care since August 20, 2001, and plaintiff would be able to return to work Monday, August 27, 2001. (Doc. 12, Ex. A, ex. 3.) Plaintiff was then approved by Pemco's HRD for a medical leave of absence from August 20, 2001, through August 26, 2001. (Doc. 12, Ex. F ¶ 7 and ex. 4.) On August 24, 2001, plaintiff received a second "Certificate to return to work" from the same doctor, in which she was instructed not to return to work before August 29, 2001. (Doc. 18, Ex. 1 at 171-73; Doc. 12, Ex. A, ex. 10.) However, Pemco never received this notice. (Doc. 12, Ex. F ¶ 7.)

During the week of August 27, 2001, plaintiff called her acting supervisor, Shell, on possibly two occasions to tell Shell she could not return to work due to her health problems. (Doc. 18, Ex. 1 at 100-01, 122, 130-31.) Plaintiff states she told Shell she was unable to fax her medical documentation for her leave because she could not drive, but she could mail it to the HRD. (Doc. 18, Ex. 1 at 132, 164, 200-01.) Shell never contacted HRD to report on plaintiff's situation, because it was plaintiff's responsibility; nor did HRD contact Shell to report or check on plaintiff's status. (Doc. 18, Ex. 2 at 20, 22; Ex. 4 at 49.)

Plaintiff states she mailed a copy of a doctor's note to Pemco on August 31, 2001, the fifth workday after her approved leave expired. (Doc. 12, Ex. A at 132.) The note, directed only to "Pemco Aeroplex," was not received by Cox or anyone at HRD. (Doc. 12, Ex. A at 133; Ex. F

¶ 7.) Plaintiff was unable to obtain a release to return to work from her doctor until the afternoon of Tuesday, September 4, 2001; that same day she spoke with her supervisor, Jackie Pierce, but did not contact the HRD. (Doc. 18, Ex. 1 at 154, 163.) September 4, 2001, was the sixth consecutive work day plaintiff missed without contacting Pemco's HRD to inform them of her need to extend her leave of absence, despite the instructions contained on her leave of absence form. (Doc. 12, Ex. A at 164-65 and ex. 1.)

Cox reviewed her leave of absence folder on Wednesday, August 29, 2001, and determined plaintiff's leave of absence had expired two days earlier. (Doc. 12, Ex. F ¶ 8.) Cox then called Carolyn Foster, an employee in plaintiff's department, to see if plaintiff had returned to work, and Foster reported plaintiff had not. (Doc. 12, Ex. F ¶ 8.) On Tuesday, September 4, 2001, the sixth consecutive missed day of work for plaintiff following the expiration of her leave of absence, Cox informed Pam Gillard, Pemco's HRD manager. (Doc. 12, Ex. D at 10.) Gillard terminated plaintiff pursuant to Pemco Company Rule 10, which states an employee is subject to immediate discharge for being "[a]bsent five (5) consecutive working days . . . without reporting to Personnel Records Section [the HRD] (voluntary quit) or reporting a reason not acceptable to [the HRD]." (Doc. 18, Ex. 6 at 3; Doc. 12, Ex. D at 11-12.)

Gillard sent plaintiff a letter stating she had been terminated on September 5, 2001. (Doc. 12, Ex. D, ex. 1.) The same day, plaintiff called Cox to notify HRD that her doctor had released her to work and provided her with a return to work slip; this was the first time plaintiff called the HRD after the expiration of her approved leave. (Doc. 12, Ex. A at 156-58.) Cox informed plaintiff she had been terminated for missing work without calling the HRD. (Doc. 12, Ex. A at 159-60.) Plaintiff informed Cox that she had spoken with Shell and Pierce during that time.

(Doc. 12, Ex. A at 160.) Plaintiff then called Shell and Pierce, who did not know she had been terminated, to ask for help in keeping her job. (Doc. 12, Ex. A at 161.) Plaintiff was not reinstated.

### III.  Standard of Review

The district court has the discretion to accept, reject, or modify the magistrate judge's proposed findings. *U.S. v. Williamson*, 339 F.3d 1295, 1307 (11th Cir. 2003); citing *United States v. Raddatz*, 447 U.S. 667 (1980); *see also* Fed. R. Civ. P. 72(b). When a magistrate judge issues a Report and Recommendation, the district judge must conduct a de novo review of those portions of the magistrate judge's Report and Recommendation to which any party objects. *See* 28 U.S.C. 636(b)(1)(C) (2003); *IFG Network Sec., Inc. v. King*, 282 F. Supp. 2d 1344, 1349 (M.D. Fla. 2003); *see also* Fed. R. Civ. P. 72(b) advisory committee notes ("the rule requires the district judge to whom the case is assigned to make a de novo determination of those portions of the report . . . to which timely objection is made"). When a district court reviews a Report and Recommendation, the de novo standard requires the district judge to base his/her conclusions on an independent review of the record, not the magistrate judge's findings. *Everwood Treatment Co., Inc. v. U.S. E.P.A.*, 1998 WL 1674543, *4 (S.D. Ala. Jan. 21, 1998).

### IV.  Discussion

#### A.  Pemco's Objections to the magistrate judge's findings of fact

Pemco objects to two statements of fact in the Report as inaccurate or misleading. First, Pemco objects to the last two sentences of the passage quoted below:

> Section 3.8.1 of [Pemco's] FMLA policy addresses periodic status reports as follows: "The company reserves the right to require an employee on FMLA-leave to report periodically on his/her status and intent to return to work following the FMLA-leave." There is no statement as to whom an employee is to give periodic status reports or a time

> frame for reporting. (Citations omitted.) The FMLA policy does not require employees to report to the HRD within five days.

(Doc. 22 at 5.) Pemco argues that, while the FMLA policy was accurately quoted, the last two sentences are inaccurate. Defendant notes that the last two sentences in the Report and Recommendation quoted above do not account for other Pemco documents that clearly instruct employees to contact defendant's HRD in order to request extensions for leaves of absence. The court agrees. First, the form given to employees requesting non-work-related medical leaves of absence direct employees to request extensions for leave by contacting Pemco's HRD. (Doc. 12, Ex. A, ex. 1.) Over the course of her employment, plaintiff received at least twelve of these forms, all containing the same language indicating the requirement to contact the HRD for leave extensions. (Doc. 12, Ex. A, ex. 1.) Even though the FMLA policy does not specifically designate an individual to whom employees should report, the policy must be read in conjunction with the requirement stated in the leave form that extensions for leave must be requested from the HRD.

Second, Pemco Company Rule number 10 subjects employees to immediate discharge for being "[a]bsent five (5) consecutive working days . . . without reporting to Personnel Records Section [the HRD] (voluntary quit) or reporting a reason not acceptable to [the HRD]," regardless of whether their leave is FMLA related. (Doc. 18, Ex. 6 at 3; Doc. 12, Ex. D at 11-12.) Pemco's Company Rule 10 contemplates termination for employees who fail to contact the HRD within five days, regardless of whether the leave qualified for coverage under the FMLA. Pemco's FMLA policy regarding unforeseeable leave, which plaintiff was subject to, typically requires employees to notify their employer of the need for leave in less than five days. Specifically, it states that "[w]here the need for leave is not foreseeable in advance, such as

because of . . . a sudden change in circumstances, or a medical emergency, only notice as soon as practicable will be required." (Doc. 18, Ex. 7 § 3.3.4.) The FMLA regulations state "[i]t is expected that an employee will give notice to the employer within **no more than one or two working days** of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." 29 C.F.R. § 825.303(a)(emphasis added). The court agrees with defendant's argument that Pemco's FMLA policy must be read in conjunction with Pemco Company Rule 10, which requires termination of an employee who misses five days of work without reporting to the HRD.

     Thus, the statement in the Report that "[t]he FMLA policy does not require employees to report to the HRD within five days" while technically correct, does not take into consideration Pemco's Leave of Absence form and Pemco's Company Rule 10 which reveal that an employee is indeed required to report to HRD within five days of taking FMLA leave.

     The second statement Pemco objects to is the magistrate judge's finding that "[plaintiff] states that she never called the HRD to initiate a leave." (Doc. 22 at 7.) This statement in the Report is technically correct because at one point in her deposition plaintiff did testify that she did not call Pemco's HRD to initiate a leave. (Doc. 18, Ex. 1 at 119.) However, she also admitted that she faxed notes to the HRD on several occasions, including August 8, 2000 and August 23, 2001 to initiate leaves of absence. (Doc. 12, Ex. A at 121-27 and exs. 1, 3, 4; Ex. F ¶¶ 5-7 and ex. 3.) Also, her mother called the HRD on her behalf to request leave or extensions of leave. (Doc. 12, Ex. F ¶ 5.)

B.  **Pemco's Objections to the magistrate judge's legal analysis**

The FMLA provides in part that an eligible employee is entitled to "a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1). The FMLA makes it illegal for an employer "to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" that law. 29 U.S.C. § 2615(a)(1).

1.  **Plaintiff's "Interference" Claim under the FMLA**

In any "interference" claim under the FMLA, a plaintiff must make a threshold showing that she is entitled to the leave underlying such claim before she can show that an employer interfered with her rights under the FMLA. *See O'Connor v. PCA Family Health Plan, Inc.*, 200 F.3d 1349, 1353-54 (11th Cir. 2000); *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711, 713 (7th Cir. 1997). In the instant case, plaintiff's failure to demonstrate that she provided proper notice of her need for FMLA leave for the period of August 27-31, 2001, prevents her from establishing her FMLA interference claim as a matter of law.

As discussed above, Pemco's policy for providing a leave of absence due to an illness or medical emergency allows employees five working days to report to the HRD the need for leave or an extension thereto before the employee is subject to termination. Pemco's notice policy is more lenient than required under the FMLA regulations, which suggest that except in extraordinary circumstances, an employee will provide the employer with notice within one to two working days. *See* 29 C.F.R. § 825.303(a) (2003); *Alexander v. Ford Motor Co.*, 204 F.R.D. 314, 318 (E.D. Mich. 2001) ("The Department of Labor regulations only require an employer to

allow two days for an employee to request an extension of leave after that employees [sic] leave has expired. Thus, this Court finds that Ford's requirement that its employees notify the company of their intentions within five days of the conclusion of leave does not violate the FMLA.")(citing 29 C.F.R. § 825.309(c))(citation omitted). By waiting until six working days had passed, plaintiff failed to meet the notice requirement under both the Department of Labor guidelines and Pemco's more lenient policy.

As a result of plaintiff's failure to satisfy Pemco's notice requirements for FMLA leave, her "interference" claim fails. An employer has the right to require employees to comply with its "usual and customary" rules regarding notice. *See* 29 C.F.R. § 825.302(d); *Lewis v. Holsum of Fort Wayne, Inc.*, 278 F.3d 706, 710 (7th Cir. 2002); *Gilliam v. United Parcel Serv., Inc.*, 233 F.3d 969, 971 (7th Cir. 2000).

In *Lewis*, the plaintiff employee was terminated after she failed to call or show up for three consecutive days following previously approved FMLA leave. *Lewis*, 278 F.3d at 709. Plaintiff had access to a telephone throughout the time she was absent without notice, and was aware of company rules terminating employees for failure to call in. *Id.* The Seventh Circuit found the company could require the employee to call in each day she missed, and that her absences were not required to be considered FMLA leave. *Id.* at 710. The court noted that the regulations "provide that 'an employer may . . . require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave,'" and held that the employer did not violate the FMLA by terminating plaintiff due to her noncompliance with its notice requirements. *Id.* (quoting 29 C.F.R. § 825.302(d)).

In *Gilliam*, the plaintiff employee was terminated, after being approved for a leave of absence, for failing to call and notify the employer as to the amount of time needed for leave. *Gilliam*, 233 F.3d at 970. The employer required employees to call their supervisor by no later than the beginning of the third day of leave to notify the employer as to how much leave would be needed. *Id.* at 971. Plaintiff was granted leave on Friday and failed to call until the next Thursday. *Id.* at 970. The employer terminated him for his failure to comply with the company's usual and customary policy. *Id.* at 971. The Seventh Circuit affirmed summary judgment for the employer, stating "[n]othing in the FMLA or the implementing regulations prevents an employer from enforcing a rule requiring employees on FMLA leave to keep the employer informed about the employee's plans. [Plaintiff's] discharge therefore did not violate federal law." *Id.* at 972.

Similarly, plaintiff in this case failed to notify Pemco's HRD of her need to extend her leave within the usual and customary five working days. Even though plaintiff alleges she attempted to notify Pemco of her need for an extension of FMLA leave, plaintiff did not follow the proper requirements for notice of her need for FMLA leave. Plaintiff was aware of the notice requirements, as she had complied with them numerous times in the past, and they were specifically noted on her FMLA leave of absence forms and in the company rules. Plaintiff had access to a telephone, but failed to call anyone in the HRD. On prior occasions, plaintiff complied with Pemco's requirements by contacting the HRD to extend her leaves of absence by faxing doctor's notices. Put simply, plaintiff was aware, or should have been aware, of the procedures to follow if she needed an extension to her leave of absence--call Pemco's HRD within five working days of the expiration of her previously approved leave of absence. Once

-13-

plaintiff failed to comply with the usual and customary notice procedures, Pemco did not violate the FMLA when it terminated her employment.

Plaintiff argues that her phone calls to her supervisor satisfy her notice obligations under Pemco's FMLA policy. Plaintiff's argument ignores Pemco's statutory right to enforce its notice procedures, including its right to designate the individuals, here, employees in (HRD),[3] to whom notice of the need for leave must be communicated. Pemco's policy requiring that notice of a need to extend a leave of absence be provided to its HRD is consistent with a similar policy validated by the court in *Alexander v. Ford Motor Co.*, 204 F.R.D. 314 (E.D. Mich. 2001). Ford's policy at issue in *Alexander* required employees who had been AWOL for five days to contact Ford's human resources department or be terminated. *Id.* at 316. The *Alexander* court held that Ford's policy comported with the FMLA. *Id.* at 318.

In *Bones v. Honeywell Int'l., Inc.*, 223 F. Supp. 2d 1203, 1210 (D. Kan. 2002), plaintiff was terminated after missing three days from work without reporting to her supervisors her need to be absent. While absent, plaintiff's boyfriend delivered a physician-completed medical leave of absence request to Honeywell's medical department. *Id.* at 1209. The notice requirements for Honeywell's medical leaves of absence procedures clearly stated: "'[y]ou must follow the "call-

---

[3] Pemco argues that its reasons for requiring notice of the need for leave to be reported to the HRD are simple and consistent with business necessity. Based on its experience, Pemco has determined that for reasons of consistency and efficiency, the implementation and enforcement of its medical leave of absence policy best falls under the ambit of its HRD. Allowing such a policy to be overseen by dozens of supervisors, who supervise more than a thousand salaried and hourly workers and cannot feasibly be trained on all of the nuances of the FMLA and other relevant laws, would simply lead to radically different interpretations and results under the policy. In addition, Pemco argues that forcing production supervisors to act as a conduit between the employee and the HRD would inevitably bog down the supervisors in the performance of their daily work. (*See* Defendant's Objections to the Magistrate Judge's Report and Recommendation at 12, f. 4.)

in policy" for your department. **Health Services will not call your manager for you.**'" *Id.* at 1210, 1216. Since plaintiff was required to contact her supervisor to request a leave of absence, the leave request her boyfriend delivered was insufficient to place Honeywell on notice of her need for leave. *Id.* at 1216. The court, relying on *Gilliam, Lewis*, and 29 C.F.R. § 825.302(d), found that an employer may enforce its own internal notice procedures, and that Honeywell's internal notice procedures were reasonable when they were made known to the plaintiff. *Id.* at 1217-18. The court found that "the goals of the FMLA are not compromised when a company . . . enacts internal policies and procedures requiring employees seeking FMLA leave to notify a particular department or a particular supervisor." *Id.* at 1218 (citations omitted).

In this case plaintiff was informed, through her past leave forms, Pemco's company rules, and conversations with her supervisor, that she was required to report to Pemco's HRD to obtain an extension for her leaves of absence. Although she had complied with Pemco's requirements on prior occasions, plaintiff did not follow Pemco's procedures during the period at issue, and failed to notify Pemco's HRD of her need for leave. Plaintiff had access to a telephone during the time at issue (as she called her supervisor), but failed to call Elaine Cox, or anyone else in Pemco's HRD, at the number listed on the leave form. Therefore, plaintiff cannot claim she provided proper notice to Pemco of her need for an extension to her leave of absence, and Pemco is entitled to judgment as a matter of law on plaintiff's FMLA claim.

### 2.   Application of 29 C.F.R. § 825.302(d) to the facts of this case

Under 29 C.F.R. § 825.302(d), Pemco may require employees to comply with its usual and customary notice and procedural requirements:

> An employer may also require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave. For example, an

employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. However, failure to follow such internal employer procedures will not permit an employer to disallow or delay an employee's taking FMLA leave if the employee gives timely verbal or other notice.

29 C.F.R. § 825.302(d).

The magistrate judge noted that although the first sentence of § 825.302(d) permits Pemco to insist that plaintiff comply with its usual and customary notice and procedural requirements, the last sentence of this section "limit[s] the effect of such requirements." (Magistrate Judge's Report and Recommendation at 15.) Therefore, the magistrate judge concluded that if plaintiff gave "timely verbal or other notice" of her need for FMLA leave, "her failure to follow Pemco's requirements that she notify the HRD in particular should not have been used to prevent her from taking an extension of her initial leave under the FMLA." (Magistrate Judge's Report and Recommendation at 16.)

In support of this interpretation of the last sentence of § 825.302(d), the magistrate court cites *Mora v. Chem-Tronics, Inc.*, 16 F. Supp. 2d 1192, 1217 (S.D. Cal. 1998), a case that is clearly distinguishable on its facts. In *Mora*, the court held an employer could not have more stringent notice requirements for leave than the notice requirements set forth in the FMLA. *Id.* Here, Pemco's FMLA notice requirements are more lenient than the FMLA requirements and thus the holding in *Mora* is inapplicable.

A ruling that the last sentence of § 825.302(d) prevents an employer from enforcing its usual and customary requirements would make the first sentence of § 825.302(d) a legal nullity. The import of the last sentence was obviously meant to prevent the employer from insisting on written notice only, and to allow verbal or other notice when an employee requests leave or an

extension for leave. As defendant argues in its Objections, "common sense dictates that the last sentence of § 825.302(d) presupposes that the 'verbal or other notice' discussed therein must go to the person or group identified to the employee as being the proper recipient of such notice." (Defendant's Objections to Magistrate Judge's Report and Recommendation at 20.)

### 3. Plaintiff's improper notice to her supervisor Pemco failed to satisfy the FMLA's notice requirements

Pemco's leave policy gives employees five days to give Pemco notice of their need for an extension of leave. Plaintiff failed to give timely notice of her need for an extension to her leave under Pemco's FMLA policy. In addition, plaintiff failed to satisfy the FMLA's notice requirements for extensions of leave.[4] Plaintiff knew she would need to extend her FMLA leave by August 24, 2001. However, plaintiff failed to contact Pemco until August 29, 2001. Plaintiff had access to a telephone throughout this period and the record reveals no extraordinary circumstances that would have prevented plaintiff from calling Pemco's HRD. By waiting so long to notify Pemco of her need for leave, plaintiff failed to meet the "as soon as practicable" standard under the FMLA and 29 C.F.R. § 825.303(a).

---

[4] As noted, the FMLA contemplates that employees will be given no more than one or two working days of learning of the need for leave to give notice to their employer. 29 C.F.R. § 825.303(a).

-17-

V.  **Conclusion**

For the reasons stated herein, the court finds that defendant's Objection to the Magistrate Judge's Recommendation that defendant's Motion for Summary Judgment be denied is due to be granted and the Recommendation of the Magistrate Judge will be rejected.  The court finds that no genuine issues of material fact exist.  Because plaintiff failed to follow Pemco's valid policy regarding leaves of absences, as well as notice requirements under the FMLA, defendant is entitled to judgment as a matter of law.  An Order granting defendant's Motion for Summary Judgment  will be entered contemporaneously herewith.

**DONE** this the 25th day of March, 2004.


_____
**SHARON LOVELACE BLACKBURN**
United States District Judge